WILLIAMS, J.,
dissenting.
hi respectfully dissent for the reasons assigned by my colleague and write to assign additional reasons:
LSA-R.S. 22:1295 provides, in part:
.... [A] properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. (Emphasis added)
In Duncan v. USAA Ins. Co., 2006-363 (La.11/29/06), 950 So.2d 544, Chief Justice Kimball stated:
... [T]he legislature gave the commissioner of insurance the authority to create a [UM rejection] form and stated that ‘such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance..’ Pursuant to that mandate, compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid. The insurer cannot rely on the insured’s intent to waive UM coverage to cure a defect in the form of the waiver. By failing to include the policy number in the blank provided on the form, the insurer failed to effectuate a valid rejection of UM coverage.
Duncan, supra, at p. 553. [emphasis added]. See also, Carter v. State Farm Mutual Auto. Ins. Co., 2007-1294 (La.10/5/07), 964 So.2d 375; Gray v. American National Prop. & Cas. Co., 2007-1670 (La.2/26/08), 977 So.2d 839, 849; Gingles v. Dardenne, 08-2995, (La.3/13/09) 4 So.2d 799.
The majority opinion finds that “the language in Duncan, supra, requires demanding and precise observance of form and procediere.” It then concludes “[W]e decline to elevate form over the triad of substance, common sense, and logic.”
|2The purpose of both the legislative mandate and the rulings in the above-cited cases was to abrogate the prior procedure of our courts in interpretating the “logical" intent of the insured in executing UM coverage (and consequently, determining whether any rejection/selection was knowingly made).
Here the majority reverts back to this pre-legislative and pre-Duncan procedure, and concludes that although all of the required spaces on the form at issue were not filled out, because it was reviewing a single-limit policy and the insured “clearly” decided to obtain lower limits per person, the UM rejection form was valid. Obviously, this omission of an amount of coverage per accident could just as readily be interpreted as proof that the insured’s representative did not understand the UM rejection form and thus did not knowingly waive full UM automobile liability coverage.[1]
In an attempt to further justify the validity of the partially completed UM rejection form, the majority then finds that the state had in effect a usable UM coverage rejection form for split-limit policies, but did not have a UM rejection form for single-limit policies, such as the policy at issue. The majority writes:
[Accordingly, at the time the representative of Peterson set out to address the *873 issue of UM coverage, there existed no form that fit glove-in-hand with a single-limit policy. Travelers should not have to suffer for the state’s failure to supply adequate and appropriate UM coverage forms ... We suggest that insurers and policy holders in Louisiana should be assisted by the Insurance Commissioner in supplying Um election[sic] forms for both single-limit and split-limit policies.
|sBecause of our state’s strong public policy in favor of UM coverage, the insurer, who chose to issue automobile liability policies in this state, had the obligation to obtain a UM rejection form from the commissioner of insurance that conformed with the terms of its single-limit policy.[2] For the majority to place this obligation in any part on the public/insured, rather than completely on the insurer, belittles or ignores this state’s strong public policy in favor of uninsured motorist coverage and its steadfast imposition of UM coverage notwithstanding the language of the policy.
I would affirm the trial court’s judgment.

. The UM rejection form at issue was executed on July 1, 2006 five days before the accident, which occurred on July 6, 2006.

. In its supplemental brief to this court, the insurer, Travelers Property Casualty Company, notified this court of a revised UM rejection form attached to Commissioner of Insurance bulletin No. 08-02 that now provides an alternative blank for insurance agents and insureds to "clearly” indicate the lower limit for a policy with combined single limits.
Travelers argues:
Had the revised form (See Exhibit 3, UM form attached to Bulletin No. 08-02) been available to Peterson Contractors (plaintiff's employer), Peterson Contractors' representative, and Peterson Contractors' insurance agent, the plaintiff would have no perceived ambiguity to exploit in this matter. Had the revised UM form (See Exhibit #, UM form attached to Bulletin No. 08-02) been available, Peterson Contractors' representative would have simply written the number "30,000” in the blank contained in the line:
'$.each accident/occurrence.'
This supplemental brief was submitted to our court at least seven days prior to the final distribution of the majority opinion.